Good morning, and may it please the Court, I'd like to reserve two minutes for rebuttal, Your Honor. The issue in this case is a narrow one. Did the district court err by denying Officer Dorman's motion for summary judgment on the plaintiff's Fourth Amendment claim based on qualified immunity? The district court erred because the record, viewed in the light most favorable to the plaintiff, demonstrates no Fourth Amendment violation for two independent and sufficient reasons. First, Officer Dorman had probable cause to stop the plaintiff for a traffic violation. Second, the plaintiff's motive for stopping the plaintiff for a traffic violation You're talking about Wren. I'm talking about Wren. But in Wren, the officer had an intention for a stop, which was a ruse. In this case, the officer testified that the express purpose for which he stopped Mr. Jordan was because he thought he had a gun. Isn't that a distinguishing characteristic from Wren? No, Your Honor, because under Wren, the Supreme Court, in Wren, the U.S. Supreme Court considered whether the temporary stop, a temporary detention of a motorist violated the Fourth Amendment unless the officer, a reasonable officer in the circumstances would have been motivated to enforce the traffic laws, as opposed to some other motivation. And the U.S. Supreme Court said that consideration was absolutely irrelevant. That whether the officer was motivated by some other factor didn't matter for the purposes of a Fourth Amendment stop. Do I understand correctly, counsel, that the city is changing the basis of its appeal from stating that the plaintiff in this case had no reasonable expectation that he'd been detained to one that there was probable cause to arrest him? Is that correct? No. And we don't allege that there was probable cause to arrest him, but to stop him. Okay. But, no, these are alternative bases that both were considered by the U.S. Supreme Court. Just a minute. Just a minute. There's a difference between probable cause to arrest and probable cause to stop? No, Your Honor, but I just wanted to be clear that the issue here is that we're raising is that the traffic code gave the officer probable cause to stop, and that justified the encounter for the purposes of the Fourth Amendment. But he testified in his deposition, I mean, referring to the officer, that he did not stop him because he crossed at an angle that was in violation of the city of Eugene's pedestrian ordinances. Isn't that correct? Actually, he testified, Your Honor, that he understood that his observation of the plaintiff crossing at other than a 45-degree angle gave him probable cause to stop him, but he chose to engage in a voluntary encounter in order to inquire about the gun. He said that in his deposition? Yes. He did several times.  I believe that I can. I believe that it is at page the excerpt of the record at page 50, Your Honor. And he said that in several cases. At page what? 50, 5-0. Okay. He also said that he chose to encounter him to inquire about the gun, but for purposes of the Fourth Amendment, his motivation is irrelevant. If the objective facts show that he had probable cause to stop, that's sufficient for the Fourth Amendment. But, Your Honor, you're correct that the alternative basis upon which the district court ruled was the fact that the district court found that the encounter between a plaintiff and a mall security officer that is reasonable, that the plaintiff was a potential, that the record viewed in the light most favorable to the plaintiff would show a Fourth Amendment violation. And, in fact, Your Honor, this case, this Court decided a case just a few months ago called U.S. v. Orman, decided in May 2007, where this Court found that an encounter between a plaintiff and a mall security officer that is remarkably similar to the circumstances in this case. But Orman, in Orman, didn't the officer ask whether he could inquire of the individual in that case, whereas in this case, he simply said, do you have a gun? Well, no, Your Honor. That isn't accurate reflection of the record, even in the light most favorable to the plaintiff. What happened then? The plaintiff testified in his deposition that Officer Dorman stopped 50 to 100 feet behind him and his companions, and that's an important undisputed fact, because What about the declaration? What did he say in his declaration? In his declaration, he said that the officer approached him and asked him if he was carrying a gun, but it doesn't talk about where the officer was. And the district court made a factual error in this case, in that the district court found that the officer stopped his patrol car between the plaintiff and his car. And, in fact, plaintiff testified in his deposition that the officer stopped 50 to 100 feet behind him. Well, that really wasn't what I was getting at. If the officer approaches the defendant or the plaintiff, and the first thing the officer says is, I need to talk to you, you may be carrying a gun. But that's not what happened here, Your Honor. But that's what the district court said happened in construing the declaration and the deposition testimony of the plaintiff. Correct. Correct. But if you read the declaration and the deposition testimony, it is apparent that the declaration condenses into two sentences an encounter that the plaintiff described in more detail in his deposition. In the deposition, it would be, I suppose, it would be consistent to say, the officer said, may I speak with you, or something like that, he made the question. Yes, exactly. And then after that, said, it looks like you're carrying a gun, I've got to talk with you, or something like that. Correct. That's what you're saying. Correct. And what the plaintiff said in his deposition is that the officer stopped his patrol car 50 to 100 feet behind him, and his companions did not block his access to his car or his exit, got out of his car and said, may I speak with you, and the defendant turned around and said, who me, and walked back to the officer. And it was then at that point. It was then that he, the officer immediately said, I am concerned that you are carrying a gun. And the, actually, the plaintiff and the officer engaged in a dialogue at that point where the plaintiff said, why do you think so, and the officer said, well, I saw this bulge, and the plaintiff said, I'm not carrying a gun. The officer said, can I check your waistband, and the plaintiff said, sure. Ms. Rudnick, you're at two minutes. If you want to save your time, you want to do that or? I'm going to go a little bit longer, thank you. Okay. Go ahead. At that point, the officer was done. And that What if there's a question about those facts? Well, there isn't, Your Honor, because the facts I'm reciting come from the plaintiff's deposition. And so there can't be a dispute. If there were a dispute of those facts? If there were a dispute, we would have a different situation. But here we don't have a dispute because it's the plaintiff's testimony that I'm reciting. The last point I want to make is that not only was that encounter consensual, but it was the plaintiff who extended it. He became upset. He claimed his First Amendment right to assembly. He said he was a city employee. He said that he believed he was being stopped because of his race. And he insisted that he be searched. He took off his sweatshirt and handed it to his friend who had joined the conversation. And the officer patted down his lower body at his request. The plaintiff said the officer was polite. He never drew his gun. He never referred to his weapon. And this case is identical to Orman. And therefore, the district court simply erred by denying the motion for summary judgment. And I'll reserve the rest of my time. Okay. Very good. Thank you. Counsel? Thank you, Your Honor. Kevin Lafke. On behalf of Cortez Jordan, may it please the court, I think that it's important to remember when we start this analysis is that we're in the unusual situation where the officer said if Mr. Jordan had attempted to leave, he would have been detained. Mr. Jordan said he believed he was not free to go. And so you have both people involved in the encounter saying this was a stop that implicates the Fourth Amendment. And yet the city would have you believe otherwise by looking at a variety of facts that are. Well, why don't you address the first point she raised about all that doesn't matter because the officer had probable cause for the traffic violation. The traffic violation was described by the chief of police as a pretext. I know that. But, you know, rents as a pretext is okay. No. Isn't it? In this case, of course, summary judgment, the light most favorable to the plaintiff. We have the officer testifying in his deposition that he didn't talk to any of the other people about the supposed angular crossing. He didn't talk to Mr. Jordan about the angular crossing. He didn't cite for the angular crossing. So he doesn't talk to anybody about it. And he doesn't claim it as a basis for the stop. And even in his deposition, he admits that the purpose of the stop was the weapon. In fact, one of the reasons in his deposition in the excerpt of record that he says he conducted the stop is that he didn't want to be embarrassed in front of his friend, Deputy Lane, who was there on this ride-along. And so, literally, this is one of the reasons he stopped Mr. Jordan. I didn't want to be embarrassed for myself and in front of my friend. And that's at, let's see where that is in the excerpt of record. I believe that was page 35 of the excerpt of record. No, 19, I'm sorry, of the excerpt of record. So your case law says there has to be some show of authority that would convince a reasonable person that they were not free to leave. And a couple of facts that I'd like you to consider that aren't emphasized in the briefing. The police officer makes a U-turn in front of this group that's crossing the street. The officer parks his car in the lane of travel and describes blocking the lane of travel. Turns on the amber overhead lights. There's a lot of talk about, well, which overhead lights is it? But some overhead lights are turned off. And I think this is terribly important, and this is a distinction from a lot of the other cases, even criminal cases that have considered this matter, is he's picked out of this group. And think about that in light of the Crawford pretextual reason, Judge, where it's the angular crossing of the street, but he's picked out of the group who are all behaving in the same fashion. And I think that's a show of authority that's important for you to consider here. Then, of course, there's the questioning. Then there's the touching of the waistband, the patting down. And we're again in this unusual situation where we're gonna have a battery claim go to trial. Battery ruling is not on appeal, harmful or offensive contact to Mr. Jordan. Yet the city is saying to you, well, this doesn't implicate the Fourth Amendment to the point where it would convince a reasonable person that they're not free to leave, yet it could be a battery, a harmful or offensive contact by a police officer to an individual. Can we switch over for a moment? Ms. Rudnick mentioned the Ormond case. And according to the facts as she recited them from the record, they were essentially identical to Ormond. That the officer parked his vehicle some distance away from your client, asked if he could ask him some questions, and then proceeded to do so about the gun. Putting aside for a moment whether you agree with the factual allegation, if that's correct, why doesn't Ormond control? I don't believe Ormond does control because of some of the facts that I just talked about, the picking of Mr. Jordan out of the group and singling him out, I think, would convince a reasonable person that they were not free to leave. If you think about that fact alone, you would consider, well, the other four people- Isn't that a different issue, though? One has to do with whether or not the reasonable person believes that he or she had the right to leave. And for a moment, let's just stipulate that he didn't have that right. But if the officer had probable cause to arrest, which is what Ms. Rudnick's indicated, then it really doesn't matter whether the person was free to leave or not. There was a right to do so. So how do you distinguish Ormond from the facts as alleged? I think there's two important pieces of this analysis, and I honestly believe that if you believe the Fourth Amendment has been implicated, and you agree that he didn't feel free to leave, then I think the whole reasonable suspicion, probable cause issue is rather straightforward because you have undisputed, in the light most favorable to the plaintiff, that Mr. Jordan's companions, that Klarfeld and Kissinger and so on, said we were all behaving the same way he was. And so, and again, in light most favorable to the plaintiff, and I keep emphasizing this because, of course, this is different than these typical cases coming to you in a criminal case where you don't know what the plaintiff was thinking. Criminal defendant doesn't testify. Here you have Mr. Jordan's declaration and deposition testimony. But again, the difference between that, another difference between that and Ormond, is being picked out of that group. So you're emphasizing the walking while black issue. I am, as one of the witnesses described it. And again, when you talk about the probable cause of reasonable suspicion, Judge Coffin, in his opinion, essentially said, well, there's, when you look in the light most favorable to the plaintiff and you see that all the people say that were with Mr. Jordan, including Mr. Jordan, that he was behaving similarly to his companions, then there cannot be reasonable suspicion or probable cause such that you could overturn the district court. Well, Mr. Lasky, the officer could have said to Jordan, may I speak with you for a minute or two, or something like that. And the officer said, that's what he said. And Jordan says, yeah, that's what he said in his deposition. And then he adds on this other, looks like you're carrying a gun, I have to talk with you, okay? Now, if the officer did say to Jordan, may I speak with you for a few minutes, or something like that. And Jordan says, who me, but then does indeed stop and speak with the officer. Isn't that, if those facts occur, isn't that a consensual stop? What the city wants you to do here, Judge, I think, is to pick and choose those facts. That's what I'm doing. I'm asking you, would that be a consensual stop? And if that were all that happened. That's all that happened. Maybe. If that were all that happened. From a defense lawyer, maybe is probably, yes, Your Honor, that's correct. So we'll, okay, then we go on, and the officer says, because the fellow obviously wondered why in the world are you asking me to talk with you. And the officer then says, it looks like you've been carrying a gun, I've got to talk to you. And then they go ahead and talk. Now, if you add that on, does that change the nature of the consensual stop in the first place? I believe it does. I believe the accusation that you're carrying a weapon, along with the U-turn, the blocking of the lane, the singling out. And if maybe that turns it from being a consensual stop into an ordered stop, you're not going to leave, I've got to talk to you. Exactly. No longer a consensual stop. It was completely reasonable for Mr. Jordan, under these facts, to aver, as he did in his declaration, that he was not free to leave. And he believed he was not free to leave. And, in fact, we know that the officer would have detained him if he'd tried. I think that you can pick out facts and you can compare them to other cases. And this court's jurisprudence, when you look at the Crapser case, I think it was one of the recent cases. And you can argue about, well, did that deviate from older cases like Washington and the Orlo-Haga, I don't know the pronunciation, but the INS case. But the sense of the jurisprudence has consistently been, would a reasonable person feel free to go about their business under these circumstances? And I think when you look at the totality of the facts here, the U-turn, the blocking of the lane, the singling out, the accusation of having carried a weapon, the physical contact that occurred before he ever said, yeah, go ahead and search me. I want to prove to you that I'm just a regular public citizen, public employee who just happens to be African-American, and you've picked me out of the group. And I do think that's a reasonable issue to talk about simply because that bears on the reasonable suspicion and probable cause. We're going to have a trial on that issue under the 14th Amendment. Thank you. Very good. Thanks for your time. Ms. Rudnick, you have a few moments left. Thank you, Your Honors. I want to make three quick points. First of all, the page of the executive record where the officer talks about probable cause to stop is page 20, where he says, Before you spoke to Mr. Jordan and contacted him that evening, do you believe you had reasonable suspicion that he committed either a crime or a violation? Yes. I had reasonable suspicion to believe he was carrying a concealed weapon. I also had probable cause to believe he was committing a pedestrian violation. Second, the plaintiff was not picked out of a crowd. He came to the officer to speak with him upon request, and he was not separated from his friends. Ms. Rudnick, I hate to end it, but your time is up. And we thank you both for your advocacy. The case is submitted. The second case on the docket today is Roos versus Walmart Stores. That case is submitted. And the next case on the docket is U.S. versus Autry. We'll now hear from counsel on that matter.
judges: Thompson, Tashima, Smith